917 So.2d 49 (2005)
Clint J. CROCHET, Sr.
v.
BARBERA CHEVY-CHRYSLER CO., INC.
No. 2004 CA 1390.
Court of Appeal of Louisiana, First Circuit.
June 29, 2005.
*51 Sean D. Fagan, Baton Rouge, for Plaintiff  Appellee Clint J. Crochet, Sr.
Robert D. Hoover, Matthew W. Tierney, Baton Rouge, for Defendant  Appellant Barbera Chevy-Chrysler Co., Inc.
Before: PARRO, KUHN, and WELCH, JJ.
WELCH, J.
In this workers' compensation dispute, the employer/defendant, Barbera Chevy-Chrysler Company, Inc., appeals a judgment rendered in favor of the employee/plaintiff, Clint J. Crochet, Sr. that, among other things, found Clint Crochet had not violated La. R.S. 23:1208 and found Barbera Chevy-Chrysler had been arbitrary and capricious in its handling of the case, thereby awarding penalties and attorney fees in favor of Clint Crochet. Finding no error in the factual findings made by the workers' compensation judge ("WCJ") or in the award of attorney fees made by the WCJ, we affirm those portions of the judgment; however, we find that the WCJ erred as a matter of law in awarding penalties, and therefore, we reverse that part of the judgment.

FACTS
The facts of this case are undisputed. On December 13, 1999, Clint Crochet, while in the course and scope of his employment *52 as a mechanic with Barbera Chevy-Chrysler, was injured as the result of an accident when he pushed a transmission and experienced pain in the lower back and his left leg. On December 17, 1999, Clint Crochet sought treatment with Dr. H. Carson McKowen, a neurosurgeon. A subsequent MRI revealed "a large herniated disc to the left with severe left S1 radiculopathy due to [L5-S1] disc herniation." On December 22, 1999, Dr. McKowen performed a surgical laminotomy and microdiscectomy at the L5-S1 level on Clint Crochet. During this time, Barbera Chevy-Chrysler commenced paying workers' compensation benefits to Clint Crochet.
At a follow up visit with Dr. McKowen on June 26, 2000, Dr. McKowen determined that Clint Crochet had reached maximum medical improvement and assigned him a 10% partial permanent whole-body impairment rating. In July 2000, at the request of Barbera Chevy-Chrysler, Clint Crochet submitted to a functional capacity exam ("FCE") at Thibodaux Physical Therapy, the result of which indicated Clint Crochet could be employed at a medium duty work level with some physical restrictions.
Thereafter, the adjuster assigned to Clint Crochet's compensation claim retained Vocational Solutions, Inc. to assist Clint Crochet in locating and securing employment within his physical restrictions. In the eighteen months that followed, Vocational Solutions, Inc. searched for suitable employment within Clint Crochet's restrictions. During this time, only one minimum-wage job at a Circle K was found. Clint Crochet applied for that job, but was never contacted about an employment opportunity.
On August 31, 2002, Clint Crochet's workers' compensation benefits were terminated on the basis that the "[e]mployee [was] able to work at [the] same or greater wage." However, at that time, Clint Crochet had not obtained employment within the medium-level work restrictions set for him by the FCE and his physician, and neither those restrictions nor his permanent partial disability ratings had been modified by any physician. Additionally, upon termination of his benefits, Clint Crochet was notified that his prior job as a mechanic at Barbera Chevy-Chrysler was no longer available, and that Barbera did not have any other positions available within his work restrictions.

PROCEDURAL HISTORY
On March 6, 2003, Clint Crochet instituted these proceedings for workers' compensation benefits, penalties, and attorney's fees. Barbera Chevy-Chrysler answered, asserting that Clint Crochet had violated La. R.S. 23:1208, and thus, he forfeited his benefits. Specifically, Barbera Chevy-Chrysler contends that Clint Crochet made false statements and/or misrepresentations regarding his level of activities and ability to return to his pre-accident employment to his physician and in his deposition testimony.
After trial on the merits, on March 25, 2004, the WCJ rendered judgment finding that Clint Crochet did not violate La. R.S. 23:1208; finding that Clint Crochet continued to be disabled; reinstating Clint Crochet's workers' compensation benefits and awarding him all past due workers' compensation benefits; and finding that Barbera Chevy-Chrysler had been arbitrary and capricious in the handling of the matter, and accordingly, awarding $2,000 in penalties and $2,000 in attorney fees. It is from this judgment that Barbera Chevy-Chrysler has appealed asserting that the WCJ erred in (1) failing to find that Clint Crochet violated La. R.S. 23:1208 and forfeited his workers' *53 compensation benefits and (2) awarding penalties and attorney fees.[1]

STANDARD OF REVIEW
The issue of whether an employee has forfeited his workers' compensation benefits is one of fact, not to be reversed on appeal absent manifest error. Dukes v. Sherwood Acres Apartments, 2001-2325 (La.App. 1st Cir.11/8/02), 835 So.2d 742, 745. Whether the refusal to pay benefits warrants the imposition of penalties and attorney fees is likewise a factual question which will not be disturbed on review in the absence of manifest error or unless clearly wrong. Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736, 740 (La.App. 1st Cir.), writ denied, 553 So.2d 466 (La. 1989). Thus, these factual findings cannot be set aside unless the appellate court finds that such findings are manifestly erroneous or clearly wrong. Stobart v. State Through DOTD, 617 So.2d 880, 882 (La. 1993); Anderson v. Eckerd Corp., XXXX-XXXX, pp. 2-3 (La.App. 1st Cir.5/6/05), 915 So.2d 901. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Dukes, 835 So.2d at 746, citing Stobart, 617 So.2d at 883.
Under the manifest error rule, the reviewing court does not decide whether the factual findings are right or wrong, but whether they are reasonable. Lizana v. Gulf Coast Pain Institute, XXXX-XXXX (La.App. 1st Cir.5/14/04), 879 So.2d 763, 765. If the factfinder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106, 1112 (La.1990).

ALLEGED VIOLATION OF LA. R.S. 23:1208
Louisiana Revised Statute 23:1208 provides that any person, willfully making a false statement or representation for the purpose of obtaining workers' compensation benefits, may be assessed civil penalties by the WCJ and may forfeit any rights to compensation benefits. The only requirements for forfeiture of benefits under La. R.S. 23:1208 are that: (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Const. Co., 94-2708 (La.9/5/95), 660 So.2d 7, 12; Dukes, 835 So.2d at 745.
Once it has been determined that a false statement or representation has been made, the WCJ must make a factual determination as to whether, based on the record, the statement or representation was willfully made "specifically to obtain benefits, and thus to defraud the workers' compensation system." Jim Walter Homes, Inc. v. Prine, XXXX-XXXX (La.App. 1st Cir.2/15/02), 808 So.2d 818, 824; Sumrall v. Luhr Brothers, 95-0779 (La.App. 1st Cir.12/15/95), 665 So.2d 796, 799, writ denied, 96-0187 (La.3/15/96), 669 So.2d 425. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. A false statement which is inconsequential to the present claim may indicate that the statement was not willfully made for the purpose of obtaining benefits. Clearly, an inadvertent and inconsequential false statement *54 would not result in forfeiture of benefits. Resweber, 660 So.2d at 16; Jim Walter Homes, 808 So.2d at 824.
Whether a statement was made "willfully" is a credibility call, and therefore subject to the manifest error standard of review. McCoy v. City of Hammond, XXXX-XXXX, p. 1 (La.App. 1st Cir.5/6/05), 915 So.2d 849; see also Guidry v. Brewer, 2002-2693 (La.App. 1st Cir.9/26/03), 857 So.2d 623, 628, writ denied, 2003-2958 (La.1/9/04), 862 So.2d 993.
In this case, Barbera Chevy-Chrysler contends that Clint Crochet violated La. R.S. 23:1208 and forfeited his workers' compensation benefits because he misrepresented the extent of the injuries he suffered, the limitations on his activities, and his ability to perform the job duties of his pre-accident employment. In support of its contention, Barbera Chevy-Chrysler submitted video surveillance, which it contends shows Clint Crochet performing activities, that he denied he could perform to physicians in his deposition testimony and in his trial testimony. However, we find that Clint Crochet admitted in his deposition testimony and in his trial testimony that he could perform all of the activities depicted in the video surveillance, and that Clint Crochet did not engage in any activities on the video surveillance that were not within the physical restrictions of medium-level work set for him by the FCE and by his treating physician. We further find that the record lacked evidence indicating Clint Crochet made any "willful misrepresentation" to physicians in his deposition testimony and in his trial testimony regarding any of his injuries or capabilities, much less, any "willful misrepresentation" made "specifically to obtain benefits, and thus to defraud the workers' compensation system." See Jim Walter Homes, 808 So.2d at 824.

AWARD OF PENALTIES AND ATTORNEY FEES
In this case, the March 25, 2004 judgment awarded penalties and attorney fees as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant, Barbera Chevy-Chrysler Co., Inc., was arbitrary and capricious in the handling of this matter, and therefore, the claimant is hereby awarded $2,000.00 in penalties and $2,000.00 in attorney fees.
At all pertinent times herein, two statutory provisions provided for the award of penalties and/or attorney fees in workers' compensation casesLa. R.S. 23:1201(F) and La. R.S. 23:1201.2.[2] Louisiana Revised Statute 23:1201 provided, in pertinent part, as follows:
A. Payments of compensation under this Chapter shall be paid as near as may be possible, at the same time and place as wages were payable to the employee before the accident . . .

*55 * * *
F. Failure to provide payment in accordance with the Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
* * *
(2) This subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
Additionally, Louisiana Revised Statute 23:1201.2 provided, in pertinent part, as follows:
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims.
During the pertinent time period in this case, the applicable statutory authority for assessing an employer with penalties and attorney fees depended on whether the employer failed to commence payment of benefits in a timely fashion or discontinued benefits that had been timely paid. Authement v. Wal-Mart, 2002-2434 (La. App. 1st Cir.9/26/03), 857 So.2d 564, 573. In Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41, 45, the Louisiana Supreme Court noted that both penalties and attorney fees were recoverable under La. R.S. 23:1201(F) if the employer or insurer failed to commence payment of benefits timely or to pay continued installments timely (or to pay medical benefits timely) unless the claim was reasonably controverted; however, only attorney fees were recoverable under La. R.S. 23:1201.2 if the employer or insurer arbitrarily discontinued payment of benefits due.[3]Authement, 857 So.2d at 573; see also Cooper v. St. Tammany Parish School Board, 2002-2433 (La.App. 1st Cir.11/7/03), 862 So.2d 1001, 1009, writ denied, XXXX-XXXX (La.4/23/04), 870 So.2d 300.
In this case, it was undisputed that Barbera Chevy-Chrysler initially commenced paying Clint Crochet's workers' compensation benefits timely, as required by La. R.S. 23:1201, and therefore, penalties and attorney fees could not be awarded in favor of Clint Crochet under La. R.S. 23:1201(F). Nevertheless, while Clint Crochet timely began receiving his benefits shortly after his injury and surgery (and continued to timely receive same), Barbera Chevy-Chrysler terminated all benefits on August 31, 2002. Thus, La. R.S. 23:1201.2 is applicable to this case because the employer discontinued benefits that had been timely paid. Louisiana Revised Statute 23:1201.2 has no provision for an award of penalties. Therefore, the WCJ could not use Barbera Chevy-Chrysler's discontinuance of benefits as grounds for the imposition of a penalty. Accordingly, as there is no other authority (statutory or otherwise) for an award of penalties under the particular *56 facts of this case, we find that the WCJ erred as a matter of law in awarding $2,000 in penalties in favor of Clint Crochet, and therefore, we reverse that portion of the March 25, 2004 judgment.
However, La. R.S. 23:1201.2 provided for an award of attorney fees when an employer or insurer arbitrarily, capriciously, or without probable cause discontinued benefits. The purpose of this penal statute is to discourage indifference and undesirable conduct by employers and insurers. Williams, 737 So.2d at 46; Canizaro v. Tangipahoa Parish School System, XXXX-XXXX (La.App. 1st Cir.8/20/03), 853 So.2d 741, 744. For purposes of imposition of attorney fees for discontinuance of workers' compensation benefits, "arbitrary and capricious behavior" consists of willful and unreasonable action, without consideration and regard for the facts and circumstances presented, or of seemingly unfounded motivation. Williams, 737 So.2d at 45-46. Whether a refusal to pay is arbitrary, capricious, or without probable cause depends primarily on the facts known to the employer or insurer at the time of its action. Id. at 46. The crucial inquiry is whether the employer had articulable and objective reasons for denying or discontinuing the benefits at the time it took that action. Id.; Authement, 857 So.2d at 574.
In this case, Barbera Chevy-Chrysler's decision to discontinue Clint Crochet's workers' compensation benefits was primarily based on the video surveillance of Clint Crochet and the resulting erroneous conclusion by Barbera Chevy-Chrysler that Clint Crochet was guilty of fraud in violation of La. R.S. 23:1208. Thus, for approximately one and one-half years, Clint Crochet did not receive his workers' compensation benefits because Barbera Chevy-Chrysler concluded that Clint Crochet committed fraud when an objective inquiry into the matter would have revealed that the activities Clint Crochet was observed to be engaged in were consistent with the physical restrictions of medium-level work set for him by the FCE and by his treating physician. Thus, Barbera Chevy-Chrysler had no reasonable basis to believe that benefits were not due to Clint Crochet and their decision to discontinue benefits was a willful and unreasonable action, without consideration and regard for the facts and circumstances of Clint Crochet's condition.
Therefore, after reviewing the record, we find that there is a reasonable factual basis for the WCJ's finding that Barbera Chevy-Chrysler was arbitrary and capricious in the manner that they handled the discontinuation of Clint Crochet's workers' compensation benefits, and thus the award of $2,000 in attorney fees was warranted.

CONCLUSION
Because the record contains a reasonable factual basis to support the WCJ's determination that Clint Crochet did not willfully make a false statement for the purpose of receiving any benefit or payment in violation of La. R.S. 23:1208, by denying he could perform certain activities which were within his work restrictions, we find that the WCJ was not manifestly erroneous in his finding that Clint Crochet did not violate La. R.S. 23:1208. We also find that the WCJ was not manifestly erroneous in finding that Barbera Chevy-Chrysler was arbitrary and capricious in the manner that they handled the discontinuation of Clint Crochet's workers' compensation benefits and in awarding attorney fees. Accordingly, we affirm those portions of the March 25, 2004 judgment. However, because we find that the WCJ erred as a matter of law in awarding penalties, *57 we reverse that part of the judgment awarding $2,000 in penalties.
Costs of this appeal are assessed to the appellant.
AFFIRMED IN PART; REVERSED IN PART.
KUHN, J., dissents and assigns reasons.
KUHN, J., dissenting in part.
While I agree with the majority's conclusion, reversing the award of penalties in favor of claimant, Clint Crochet, I disagree with the affirmance of the award of attorney fees. Because the judgment issued by OWC is not precise, definite, and certain insofar as claimant's entitlement to disability benefits, the record fails to establish whether Barbera Chevy-Chrysler was arbitrary, capricious, and without probable cause in terminating Crochet's disability benefits so as to permit this court to affirm the award of attorney fees under La. R.S. 23:1201.2. I would vacate OWC's orders of reinstatement and back-due workers' compensation benefits as well as the award of attorney fees. The matter should be remanded for OWC to issue a judgment setting forth the type, rate, and duration of weekly indemnity benefits to which claimant is entitled  if any  and a determination of claimant's entitlement to an award of attorney fees in light of its ruling on disability benefits.
The judgment issued by OWC orders that "claimant ... continues to be disabled, and his benefits shall be reinstated." The judgment additionally states, "claimant is hereby awarded all back-due workers' compensation benefits." Louisiana courts require that a judgment be precise, definite and certain. Vanderbrook v. Coachmen Industries, Inc., XXXX-XXXX, p. 11 (La.App. 1st Cir.5/10/02), 818 So.2d 906, 913. The specific nature and amount of damages should be determinable from a judgment without reference to an extrinsic source such as pleadings or reasons for judgment. Id., XXXX-XXXX at pp. 11-12, 818 So.2d at 913. Judgments are recorded in the mortgage records; judgments are not recorded alongside with pleadings and/or written reasons. La. R.S. 9:2755. Only judgments are made executory in other Louisiana courts. La. C.C.P. art. 2781. A judgment may be executed by a writ of fieri facias. La. C.C.P. art. 2291. A certified copy of a judgment is considered authentic evidence in an executory proceeding. La. C.C.P. art. 2636. A third person should be able to determine from a judgment the amount owed without reference to other documents. Vanderbrook, XXXX-XXXX at p. 12, 818 So.2d at 913-14.
Neither the pleadings nor the evidence establishes the type or duration of the disability benefits to which claimant is entitled. Claimant alleged only that benefits had been terminated or reduced. The employer admitted in its answer that it had paid compensation benefits in the amount of $384.00 from December 13, 1999 through August 31, 2002. The evidence shows that claimant was paid weekly disability benefits in the amount of $384.00 from December 12, 1999 through December 28, 2000, noted by the employer as temporary total disability (TTD) payments.[1] Claimant began receiving monthly disability benefits in the amount of $1,486.65 from January 2001 through August 2001, noted by the employer as supplemental earnings benefit (SEB) payments.[2] Although the parties do not dispute *58 that claimant has suffered a 10% whole-body permanent partial disability, claimant's treating physician and the independent medical examiner chosen by the employer both concluded that Crochet had reached maximum, medical improvement no later than September 2000. From the record, I cannot discern whether the benefits OWC ordered "be reinstated" were those for TTD or SEB or the type, rate, or duration of "all back-due workers' compensation benefits" that OWC awarded to claimant.
Although on appeal appellant-employer challenged only those portions of the judgment which awarded penalties and attorney's fees as well as OWC's implicit finding that Crochet had not made a willful misrepresentation for the purpose of obtaining benefits, I do not see how this court can review the propriety of the imposition of attorney's fees without knowledge of the type, rate, and duration of the "award" made. Without a ruling establishing the benefits to which Crochet is entitled we simply cannot determine whether Barbera Chevy-Chrysler was arbitrary, capricious, or without probable cause in terminating the benefits. Thus, I dissent on the affirmance of the award of attorney fees and suggest that this case should be remanded so as to allow the rendition of a proper judgment.
NOTES
[1] Barbera Chevy-Chrysler did not otherwise brief the issue of Clint Crochet's entitlement to workers' compensation benefits.
[2] La. R.S. 23:1201(F) was amended and rewritten by 2003 La. Acts, No. 1204, § 1 and La. R.S. 23:1201.2 was repealed by section 2 of that act. However, La. R.S. 23:1201 was further amended by Act 1204 to include subsection I, the present statutory authority for the payment of penalties and attorney fees when an employer or insurer discontinues payment of compensation benefits. La. R.S. 23:1201(I), provides in pertinent part, as follows:

Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims.
[3] However, we note that presently under La. R.S. 23:1201(I), both penalties and attorney fees are recoverable if the employer or insurer arbitrarily and capriciously discontinues payment of workers' compensation benefits due.
[1] Barbera Chevy-Chrysler's answer also noted that claimant had failed to set forth his average weekly wage and stated that the correct rate was $817.90.
[2] The amount of $384.00 multiplied by fifty-two weeks and divided by twelve months yields a monthly amount of $1,664.00. Claimant testified that he has not worked since the December 1999 injury. I cannot determine from the record what amounts the employer used to calculate monthly benefits of $1,486.65.