818 So.2d 906 (2002)
Frederick VANDERBROOK and Merilee Vanderbrook
v.
COACHMEN INDUSTRIES, INC. and Paw-Paw's Camper City, Inc.
No. 2001 CA 0809.
Court of Appeal of Louisiana, First Circuit.
May 10, 2002.
*908 Kimberly Sanders, Mandeville, for Plaintiffs/Appellees Frederick Vanderbrook and Merilee Vanderbrook.
Sidney W. Degan, III, Denise L. Martin, New Orleans, for Defendant/Appellant Paw-Paw's Camper City, Inc.
Michael Hart, Baton Rouge, for Defendant Coachmen Industries, Inc.
Before: FITZSIMMONS, DOWNING and LANIER,[1] JJ.
DOWNING, J.
This appeal arises from a judgment granting the Vanderbrooks' motion for summary judgment in a redhibition/"Lemon Law" action arising from the purchase of a camper-van-recreational vehicle from Paw-Paw's Camper City, Inc. (Paw-Paw's). For the following reasons we affirm the judgment as to rescission of the sale under redhibition; we reverse as to the damages, and remand for further proceedings on the issues of damages and attorney fees.

FACTS AND PROCEDURAL HISTORY
On September 30, 1999, Frederick and Marilee Vanderbrook (the Vanderbrooks) bought a 1998 Coachmen B demonstrator camper van, with 3800 miles on the odometer, at Paw-Paw's in Hammond, Louisiana. The purchase price totaled $61,832.06. This vehicle is a small motor home built upon a van chassis and includes kitchen and bathroom amenities. A separate battery (referred to as "house" battery or "coach" battery by the parties, hereinafter referred to as "RV" battery, as it is referred to in the Owner's Manual) powers these amenities. While in transit, the RV battery is supposed to be charged by the vehicle's alternator. The kitchen appliances will not operate, nor will the toilet, unless this RV battery is fully charged. Coachmen Industries, Inc., of Elkhorn, Indiana, made the modifications on this van.
The Vanderbrooks returned the van to Paw Paw's on October 14, 1999 for repair because the RV battery would not charge while in transit. Paw Paw's allegedly fixed the problem and returned the vehicle to the Vanderbrooks on October 19. On October 22, however, the van was returned *909 to Paw Paw's with the same RV battery problem. This time, Paw Paw's kept the vehicle until November 17 before returning it as being repaired to the Vanderbrooks. On January 14, 2000, the van was again taken to Paw Paw's for the identical electrical problem. This time, the van stayed in the shop until February 9 before being returned to the Vanderbrooks. Two days later, however, the van was back in Paw Paw's shop for the same electrical problem. On February 19, the RV battery would not stay charged and the Vanderbrooks took the van back to Paw Paw's for repair. On March 8, the van was again returned to Paw Paw's for repair and was returned to the Vanderbrooks on March 14. Two days later the electrical system failed again. On March 27, Coachmen Industries, Inc. picked up the van and took it to its Indiana plant so that the problem could be assessed and hopefully resolved. Coachman however, was unsuccessful in the repair of the electrical system and the RV battery still would not charge during transit.
After notice, the Vanderbrooks filed suit on April 25, 2000 against Paw Paw's and Coachman Industries, Inc. to rescind the sale pursuant to LSA-R.S. 51:1941 et seq., Louisiana's "Lemon Law" statute, and LSA-C.C. art. 2520 et seq., addressing redhibitory defects. On January 9, 2001 their motion for summary judgment was granted against Paw Paw's and denied against Coachman Industries, Inc. Judgment was signed on January 19. Paw Paw's Motion for Rehearing and/or New Trial was denied on January 22. Paw Paw's suspensively appealed the January 19 judgment on February 22 alleging that the trial court erred in granting the motion when discovery was incomplete and when there was an issue of material fact as to whether or not plaintiffs properly charged the RV battery pursuant to the manufacturer's instructions.

STANDARD OF REVIEW

Motion for Summary Judgment
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966B. Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Calhoun v. Hoffman-La Roche, Inc., 98-2770, p. 5 (La.App. 1 Cir. 2/18/00), 768 So.2d 57, 61, writ denied, 00-1223, (La.6/23/00), 765 So.2d 1041. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Calhoun at 98-2770, p. 5, 768 So.2d at 61.

DISCUSSION

Sufficiency of Affidavits
Paw Paw's first alleges that the Vanderbrooks' affidavits are defective because they do not set forth any information affirmatively showing that they are competent to testify as to the existence of a defect in the vehicle's electrical system. Paw Paw's contends that affidavits are essential to show whether there was a defect in the vehicle, whether the defect was nonapparent, whether the defect substantially impaired the vehicles use and market value, and whether the Vanderbrooks had reason to know of the vehicle's alleged defect. Paw Paw's contends that the Vanderbrooks' affidavits do not set forth any information as to what methods were used *910 to determine that the vehicle's electrical system was defective. Consequently, Paw Paw's asserts that when an expert's affidavits contain no information concerning scientific methods underlying his opinion, the trial court cannot assess the reliability of the opinions expressed, and thus, the affidavit is inadmissible. To support this proposition Paw Paw's cites Vardaman v. Baker Center, Inc., 96-2611 (La.App. 1 Cir. 3/13/98), 711 So.2d 727. Paw Paw's alleges that the Vanderbrooks' affidavits are self-serving and not supported by scientific expertise.
Generally, a lay witness can only testify to the facts within his knowledge and not to impressions or opinions; however, a witness is permitted to draw reasonable inferences from his personal observations. State v. Alexander, 430 So.2d 621, 624 (La.1983). This means that one does not need affidavits to prove the obvious. In this case, the record reflects that the Vanderbrooks produced affidavits that the vehicle's RV battery would not stay charged. The appliances and other amenities will not function properly unless the RV battery is charged. The service records of the vehicle indicate that the vehicle was repaired at least eight times for the same RV battery problem. The Vanderbrooks detected the RV battery problem within two weeks of the van's purchase.
Paw Paw's, on the other hand, did not introduce any countervailing affidavits or evidence to the contrary. If the mover produces convincing proof by affidavits or other evidence of fact upon which the motion is based, and no counter affidavits or other proof are offered by the opposing party to contradict that evidence, the conclusion may be justified that there is no genuine issue as to the facts so proved. See Waddell v. Bickham, 431 So.2d 59, 60 (La.App. 1 Cir.1983).
Paw Paw's contends that the Vanderbrooks' affidavits contain opinion evidence requiring expert testimony. Specifically, Paw Paw's alleges that "because the affidavits have not set forth any information to indicate that the plaintiffs are qualified as experts in the field of automotive electrical systems, they are not qualified to determine whether or not the van's electrical system is defective." A "lay" person is not required to be a meteorologist to testify about prevailing wind direction nor does it take a watchmaker to state the time. The Vanderbrooks' affidavits state that they bought a $61,832.06 van with certain amenities, the Owner's Manual in evidence states that these amenities run on the RV battery. Paw Paw's service records and the deposition of Frederick Vanderbrook state that the amenities are inoperable due to an electrical problem resulting in the RV battery failing to charge. When the amenities run off the RV battery and eight times it has failed to charge while in transit, necessitating repairs, it is not impermissible for a "lay" person to conclude that the electrical system or battery is not operating satisfactorily.
Paw Paw's next contends that, "plaintiffs' intent or motive when purchasing the van cannot be proven by affidavit because they are not subject to cross-examination." It should be noted that defendant took plaintiff, Frederick Vanderbrook's, deposition and cross-examined him. Defendant however, did not introduce any portion of the deposition that would indicate that Mr. Vanderbrook would have bought the van without working amenities or would have purchased the van at a lower price without working amenities. See LSA-C.C. art. 2520. It is ludicrous and borders on frivolous to suggest that a person might pay full price for a vehicle that includes amenities such as running water, a microwave oven and a toilet, and not expect them to work. Although it is rarely appropriate to *911 use summary judgment for a determination based on intent or motive, this is exactly the type of rare case contemplated by the Supreme Court in Simoneaux v. E.I. du Pont de Nemours and Company, Inc., 483 So.2d 908 (La.1986). See also Carter v. BRMAP, 591 So.2d 1184 (La. App. 1 Cir.1992). We find this assignment of error to be without merit.

Unanswered Discovery
Paw Paw's next alleges that the summary judgment motion was granted improperly because, at the time of the hearing, plaintiffs had not responded to its discovery and, in order to develop a defense, it needed to know if the Vanderbrooks properly followed the recharging instructions. Paw Paw's asserts that this unanswered question creates a genuine issue of material fact precluding summary judgment. Paw Paw's contends that the Owner's Manual states that a 120-volt system should be used whenever possible to reduce the load on the 12-volt battery. This procedure entails the owner connecting the vehicle to an external 120-volt electrical source in order to charge the RV battery. Paw Paw's alleges that Frederick Vanderbrook testified that he only used the shoreline connection "occasionally" to charge the RV battery, when the van was not in use, because it was too "inconvenient." Paw Paw's contends that there is an issue as to whether the van's electrical failures were due to a defect or because plaintiffs failed to follow the manufacturer's charging instructions. Paw Paw's asserts that this question should have precluded the court from granting the summary judgment.
In this case, the record reveals that Paw Paw's did not propound formal discovery until December 21, 2000, nearly one month after the motion for summary judgment was filed and over nine months after the Vanderbrooks filed suit. Paw Paw's argues that the Vanderbrooks' failure to answer the discovery denied it the opportunity to prove its case. The record, however, reveals that Paw Paw's neither requested a court order requiring the Vanderbrooks to comply with discovery nor asked for a continuance. Paw Paw's also failed to file an affidavit showing facts essential to justify its opposition or why it could not justify its opposition as required pursuant to LSA-C.C.P. art. 967.
There is no absolute right to delay action on a motion for summary judgment until discovery is completed. Simoneaux, 483 So.2d at 912. Under LSC.C.P. art. 967, a trial court clearly has the discretion to issue a summary judgment after the filing of affidavits, or the judge may order a continuance to permit affidavits to be obtained, depositions to be taken, or discovery to be had. Or the trial court may make such other order as is just. LSA-C.C.P. art. 967. Unless plaintiff shows a probable injustice, a suit should not be delayed pending discovery when it appears at an early stage that there is no genuine issue of fact. Simoneaux, 483 So.2d at 913. The only requirement regarding discovery is that the parties be given a fair opportunity to present their claim. The mere claim by an opponent to a motion for summary judgment that he does not have in his possession the facts and information necessary to counter such a motion will not defeat a summary judgment motion. LSA-C.C.P. art. 967. See Waddell, 431 So.2d 59. Under the facts of this particular case, Paw-Paw's Camper City, Inc. had the opportunity for "adequate discovery." LSA-C.C.P. art. 966C(1). Additionally, notwithstanding Paw-Paw's opinion on the completeness of discovery, Paw-Paw's cannot rely on "the mere allegations or denials of [its] pleading" to rebut a supported motion for summary judgment by the plaintiffs. *912 LSA-C.C.P. art. 967. Paw-Paw's "must set forth specific facts showing that there is a genuine issue for trial." Id. Mistakenly, Paw-Paw's relied on "mere allegations," and failed to make the required showing in response. Id. Paw Paw's has failed to show it was prejudiced in any way from proving its opposition. Therefore, this assignment of error is without merit.

Lemon Law
In order to obtain rescission under the "Lemon Law" a plaintiff must prove (1) that the vehicle was sold with an express warranty; (2) that the vehicle contained a "nonconformity" or defect; and (3) that, after four or more attempts, the nonconformity has not been repaired or that the vehicle is out of service by reason of repair for a cumulative total of ninety or more calendar days during the warranty period. LSA-R.S. 51:1941, 51:1942, 51:1943, and 51:1944. Rhodes v. All Star Ford, Inc., 599 So.2d 812, 815 (La.App. 1 Cir.1992).
Our review of the record reveals that the Vanderbrooks failed to introduce evidence of an express warranty, although it does appear from the exhibits that an express warranty exists. Because we are unable to review the terms of the warranty, we are unable to review whether or not there was noncompliance with its terms. The Vanderbrooks, therefore, have failed to establish, as a matter of law, that they are entitled to summary judgment in their favor under the "Lemon Law." The "Lemon Law" issue is remanded to the trial court for further proceedings.

Redhibition
To sustain a suit in redhibition, a purchaser must prove the following elements: (1) that the thing sold contains a defect or defects which render the thing sold either absolutely useless for its intended purpose or its use so inconvenient that the buyer would not have purchased the item had he known of the defect; (2) that the defect existed at the time of sale, and was not apparent; and (3) that the seller was given the opportunity to repair the thing and failed to do so. LSA-C.C. art. 2520; Rhodes, 599 So.2d at 813-814.
Paw Paw's alleges that the Vanderbrooks did not prove that the malfunction substantially impaired the use of the vehicle. Paw Paw's also alleges that the Vanderbrooks did not prove that the van was so defective that it could not be used for the intended purpose. As discussed above, we have concluded that the Vanderbrooks' affidavits sufficiently established their intent regarding the vehicle.
We also conclude that the affidavits, pleadings, depositions, exhibits and other discovery are adequate to establish their entitlement to judgment on the redhibition claim. The record reflects that Frederick Vanderbrook's deposition established that the van was primarily purchased to use in his business as an insurance investigator, where his job takes him out of town to look at hundreds of accident sites per year. He also intended to use this vehicle for pleasure trips. The Vanderbrooks experienced problems with the RV battery almost immediately, and the problem is of such a type that it is not obvious unless the vehicle is in transit. The defect became apparent within two weeks of purchase and was returned to Paw Paw's for repair. The Vanderbrooks attempted to have the vehicle repaired at least eight times within a six-month period. The vehicle was out of service by reason of this repair in excess of fifty days during that time period. The Vanderbrooks produced the service repair records showing that the toilet and appliances were inoperable when the RV battery was not charged. The exhibits include numerous letters from Frederick Vanderbrook to Paw Paw's setting out the *913 electrical problems and explaining his frustration of constantly dealing with the inconvenience of having a power failure while on an extended trip. On March 7, 2000, the Vanderbrooks gave written notice to Paw Paw's stating that unless the RV battery problem was resolved they would be forced to take legal action.
The Vanderbrooks met their burden by producing sufficient information to establish their entitlement to summary judgment, including the work orders and attempts of repair, correspondence regarding the alleged defect, Frederick Vanderbrook's deposition, and defendant's responses to discovery. They also introduced the purchase invoice, marketing documents and brochures, vehicle's wiring diagram and portions of the Owner's Manual. Frederick Vanderbrook's deposition avers that he followed the Owner's Manual instruction on how to operate the RV battery system.
An examination of the Owner's Manual states that a 120-volt source should be used to reduce the load on the 12-volt battery. It does not however, say how frequently the van owner must plug into this source to charge the RV battery. The Owner's Manual in fact says, "most components on your van, such as the water pump and interior lights only operate from a 12-volt (DC) source." Since the Owner's Manual does not make plugging into a 120-volt electrical source a requirement, no factual issue exists as to whether or not the Vanderbrooks properly recharged the vehicle.
The record reflects that the Vanderbrooks met their burden of proof to prove a redhibitory defect pursuant to LSA-C.C. art. 2520 et seq.
We therefore conclude that the trial court did not err in granting the Vanderbrooks' motion for summary judgment in favor of Paw Paw's on the basis of having proven the existence of a redhibitory defect and are therefore entitled to rescission of the sale, as a matter of law.

Damages
The judgment in this matter states, "and damages be awarded as prayed for in plaintiffs petition." Louisiana courts require that a judgment be precise, definite and certain. See Scott v. State, 525 So.2d 689 (La.App. 1 Cir.1988). The specific nature and amount of damages should be determinable from a judgment without reference to an extrinsic source such as pleadings or reasons for judgment. As our supreme court held nearly a century ago:
[I]f a judgment purports to be final and is given upon a money demand, the amount of the recovery must be stated in it with certainty and precision. If the amount remains to be determined by a future contingency, or ascertained by references, or diminished by the allowance of an unliquidated credit, or is otherwise indefinite and uncertain, it is no proper judgment.
Fontelieu v. Fontelieu, 116 La. 866, 41 So. 120, 125 (La.1906). See also Russo v. Fidelity & Deposit Co., 129 La. 554, 56 So. 506, 508 (La.1911); and Simon v. Hulse, 12 La.App. 450, 124 So. 845, 846 (La.App. 1 Cir.1929).
Judgments are recorded in the mortgage records, not judgments and pleadings, not judgments and written reasons. LSA-R.S. 9:2755. Only judgments are made executory in other Louisiana courts. LSA-C.C.P. art. 2781. A judgment may be executed by a writ of fieri facias. LSA-C.C.P. art. 2291. A certified copy of a judgment is considered authentic evidence in an executory proceeding. LSA-C.C.P. art. 2636. A third person should be able to determine from a judgment the amount owed without reference to other *914 documents. (Form No. 1271 provided in Volume 12 of the Louisiana Code of Civil Procedure is an example of a precise, definite and certain judgment.) Further, if different elements of damages begin to accrue legal interest at different times, such as attorney's fees, they should be itemized separately. Because the exact amount of damages cannot be determined from this judgment the trial court's award of damages is reversed and this issue must be remanded to the district court.

DECREE
For the foregoing reasons, we affirm the judgment of the trial court granting the motion for summary judgment as to the finding of liability on the redhibition claim only and reverse granting summary judgment as to the "Lemon Law" claim and damages. This case is hereby remanded to the trial court for further proceedings in accordance with the law and the views expressed herein. The cost of this appeal is assessed against Paw Paw's Camper City, Inc., appellant.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
NOTES
[1] The Honorable Walter I. Lanier, Jr., Judge (retired), First Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.